

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

         :     CRIMINAL ACTION

       v.     **FILED** :

          :     NO. 07-295

JOHN S. CARTER          :

      OCT 3 0 2007

          :

SURRICK, J.    MICHAEL E. KUNZ, Clerk     OCTOBER _30_, 2007
         By_____ Dep. Clerk

## <u>MEMORANDUM & ORDER</u>

     Presently before the Court is Non-Party Independence Seaport Museum's Motion to

Quash or Modify Subpoena (Doc. No. 16). Oral argument was held on this Motion on October

22, 2007. For the following reasons, the Motion will be granted in part and denied in part.

**I.**     **BACKGROUND**

     On June 4, 2007, Defendant entered a plea of guilty to two counts of mail fraud and one

count of tax evasion. (Doc. No. 5.) The charges are the result of Defendant's conduct during the

period when he was president and chief executive officer of the Independence Seaport Museum

("ISM"). Pursuant to court order, the Probation office prepared a Presentence Investigation

Report which calculates the sentencing guideline range as 151 to 188 months. On October 12,

2007, the United States Attorney filed a Sentencing Memorandum. (*See* Doc. No. 13.) In the

Memorandum, the Government requests an upward departure from the guideline range. (*Id.* at

55.) The Government's rationale for this request is that the sentencing guidelines do not

sufficiently address the harm inflicted by Defendant on the reputation of the ISM. (*Id.* at 55-63.)

The Government argues, *inter alia*, that:

> Both ISM and the community suffer when taxpayer monies are misappropriated by individuals such as Carter, and the efforts to replace those stolen funds become even more difficult where, as here, there is a loss of public confidence in cultural and educational public institutions such as ISM.  By disgracing himself through his thievery, defendant Carter has caused much embarrassment to and public ridicule of ISM, whose donor base eroded substantially during the final years of Carter's tenure.

(*Id.* at 57-58.)  The Government further argues that Defendant's actions have "demoralized

ISM's employees and made their jobs all the more difficult." (*Id.* at 58.)

The Government's recommendation for an upward departure cites the Victim Impact

Statement submitted by ISM. (Doc. No. 13-2.)  That statement sets forth at some length the

nature of the harm suffered by the ISM as a result of Defendant's conduct.  ISM claims that

Defendant "would intimidate employees working for him so that his extravagant spending and

mismanagement would go unchallenged and not be brought to the Board's attention." (*Id.* at 1.)

ISM accuses Defendant of being "frequently absent from the Museum and from Philadelphia"

and that "he showed little interest in the daily operations of the Museum." (*Id.* at 1-2.)  The

Victim Impact Statement strongly suggests that Defendant is responsible for "significant

reductions in programs, visitors and staff," increased deficits, and the shrinking of its endowment

from $27 million in 2000 to $7.7 million in 2005. (*Id.* at 1-2.)

On October 15, 2007, upon receipt of the Government's Sentencing Memorandum,

Defendant issued a subpoena to ISM pursuant to Federal Rule of Criminal Procedure 17(c).

(Doc. No. 16, Ex. A.)  Attached to this subpoena was a request seeking thirty different categories

of documents related to various aspects of the operation and management of ISM. (*Id.*)  The

items requested are as follows:

2

1. Annual audit reports for the years 1997-2005 including management representation letters.

2. UNUM policy LAD362556 disability policy for John Carter.

3. "Conflict of Interest Forms" completed by Trustees/Port Wardens for the years 1997-2005.

4. Any and all documents, including, but not limited to invoices, donation forms etc. regarding ISM owned vessels stored at Osprey Point Marina in Rock Hall, MD specifically including but not limited to the vessels: NIMBUS and KATRINA (ca. 1994-98).

5. Minutes of Finance Committee meetings for 1996-2005.

6. Minutes of Executive Committee meetings for 1997-2005.

7. Minutes of Audit Committee meetings for 1997-2005.

8. Minutes of Board of Trustees/Port Warden meetings for years 1997-2005.

9. All documents including but not limited to bills of sale, documentation/paperwork (including brokerage payments made), storage and maintenance records, etc. relating to vessels donated to ISM between 1994-2005 and later sold.

10. All internal ISM policies governing the acquisition (whether by purchase or donation) of vessels.

11. All internal ISM policies governing the acceptance of donated vessels as historically significant.

12. All documents evidencing approval and dates of adoption of the policies identified in ¶¶ 10 and 11 above.

13. ISM's bylaws and related documents.

14. Policies governing use of vessels including but not limited to those adopted on or about 5/14/04 by the Board of Trustees/Port Wardens as well as minutes evidencing adoption of the policies.

15. All curatorial policies including but not limited to those adopted by the Board of Trustees/Port Wardens on or about 5/14/04 as well as all minutes and other documents relating to such policies.

16. All ethics policies as well as all minutes and other documents relating to such policies.

17. Petition signed by "31 staff members" in interview expressing "no confidence" in Carter as CEO.

18. Documents relating to vessels repaired, built and/or completed by ISM boatshop at behest or on behalf of Peter Kellogg.

19. All documents relating to Peter Kellogg's use of ISM's vessels.

20. Documents relating to ISM's disposition of all vessels identified in ¶¶ 17 and 18 above.

21. All documents evidencing donations made to ISM between 1989-2006 by Peter Kellogg and/or related donors, including donor funds, or foundations which he directs to ISM.

22. All reports prepared by Karen Cronin including those sent to Peter Kellogg outlining the use of funds in ISM boatshop related activities during the years 2000-2006.

23. Documents relating to the maintenance or storage costs incurred during 2000-2006 for the vessels: BULL, BEAR, TORCH, MYTH, SPY, SILENT MAID.

24. Bill of sale for the vessel TAMWOCK to Peter Kellogg.

25. Documents relating to John Carter's annual review by the board of trustees, executive committee or chairman.

26. Documents relating to bonuses paid to John Carter over the course of his employment, along with letters of transmittal if any and copies of checks for same.

27. Resignation letter of Karen Cronin, along with any agreements between Cronin and ISM relating to her separation from ISM.

28. Copies of any letters, messages, email messages etc. relating to John Carter's management by outside sources (i.e., people not on board of trustees).

29. Copies of any and all claims and/or lawsuits made to Goldenberg Rosenthal concerning its failure to discover.

30. Copies of any non-privileged documents prepared by forensic accounts, Nihill & Riedley, including but not limited to reports, including worksheets, correspondence, etc.

Defendant claims that he needs all of these documents for the sentencing hearing.

On October 18, 2007, counsel for ISM filed the Motion to Quash or Modify Subpoena. (*See* Doc. No. 16.) ISM argues that Defendant's subpoena should be quashed because the documents sought are irrelevant to his sentencing, and because collection and production of the documents would be costly, unduly burdensome, and oppressive. (*Id.* at 3-8.) ISM argues that Defendant's subpoena is yet another example of Defendant's victimization of ISM, is designed to harass and embarrass the Museum, and is simply a fishing expedition. (*Id.* at 8-9.) Defendant filed a response to the Motion in which he suggests that the requests are narrowly tailored to seek information relevant to the allegations in the Government's request for an upward departure and ISM's contentions in its Victim Impact Statement. (Doc. No. 17.) The Government argues that most of the documents requested by Defendant have no relevance whatsoever to the sentencing

proceeding. (Hr'g Tr. 6-11, Oct. 22, 2007.) The Government points to the fact that Defendant has only a limited right to discovery from the Government in the trial phase and his demand for the contents of the victim's files at sentencing for the purpose of casting blame on the victim is improper. (*Id.*)

## II.   DISCUSSION

The procedure prescribed by the Federal Rules of Criminal Procedure for sentencing is, like most court proceedings, adversarial in nature. *Burns v. United States*, 501 U.S. 129, 138 (1991) (noting that Rule 32 provides for "focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guidelines sentence"). Federal Rule of Criminal Procedure 32, which governs sentencing in federal courts, was motivated by Congressional intent to preserve the due process rights of defendants at the sentencing phase. *United States v. Nappi*, 243 F.3d 758, 763 (3d Cir. 2001). A court looks to the parties at sentencing to advance arguments that are "thoughtful and well reasoned." *Id.* at 766. Ultimately, a district court has "wide discretion in determining what sentence to impose." *United States v. Tucker*, 404 U.S. 443, 446 (1972). In exercising that discretion the court has an obligation "to appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it]he may consider, or the source from which it may come." *Id.* A court is further obligated to preserve a defendant's due process rights by insuring that it does not rely on misinformation in determining his sentence. *United States v. Spiropoulos*, 976 F.2d 155, 163 (3d Cir. 1992).

Defendant served the subpoena on the victim, ISM, in order to obtain documents in advance of his sentencing. The Defendant's use of a Rule 17(c) subpoena at this stage of

proceeding is unusual. "[R]ule 17(c) is designed as an aid for obtaining relevant evidentiary

material that the moving party *may use at trial*." *United States v. Cuthbertson*, 630 F.2d 139,

144 (3d Cir. 1980) (emphasis added). Nevertheless, as the Tenth Circuit observed in the case of

*United States v. Winner*, 641 F.2d 825, 833:

> Although Rule 17 subpoenas are generally employed in advance of trial, we see
> no reason why this use should not be available for post-trial motions and sentencing.
> In such situations, the party seeking production must show: (1) that the information
> is evidentiary and relevant; (2) that it is not otherwise procurable in advance through
> the exercise of due diligence; (3) that the party seeking production cannot properly
> prepare for post-trial motions or sentencing without advance inspection; and (4) that
> the application is made in good faith and is not simply a "fishing expedition."

*Id.* (citing *United States v. Nixon*, 418 U.S. 683, 699-700 (1974)). In this case the concerns

raised by ISM and the Government go primarily to the relevance of the documents requested and

the good faith of Defendant in seeking to present these documents.[1]

In some respects, the parameters of relevance in this instance are defined by the

arguments that the Government seeks to make at sentencing and the evidence and testimony the

victim, ISM, seeks to offer in support of those arguments. ISM's Victim Impact Statement

contains a number of allegations with regard to Defendant's conduct. For instance, ISM's

statement blames "significant reductions in programs, visitors, and staff" as well as increasing

---

[1] The Government also questions the timing of Defendant's subpoena arguing that this
sentencing hearing has been scheduled for months and that Defendant waited until the last
minute to issue this subpoena. The Government filed its Sentencing Memorandum on Friday,
October 12, 2007. The Memorandum frames the scope and substance of the issues to be
addressed at sentencing. In this instance, the Memorandum gave notice of the Government's
intent to seek an upward departure, and crystalized the manner in which it intended to rely upon
ISM's Victim Impact Statement in making its case. Only after this notice was given did
Defendant have notice of the scope of the Government's argument at sentencing. Defendant
served his subpoena on October 15, 2007, the first business day following the filing of the
Government's Sentencing Memorandum.

annual deficits on Defendant's conduct.  (Doc. No. 13-2 at 1.)   ISM also implies that the

reduction of its endowment from $25 million in 2000 to $7.7 million in 2005 was the result of

Defendant "depleting" it and "spending operating funds to pay for his lavish lifestyle."  (Doc.

No. 13-2. at 2.)  In addition, ISM makes several allegations regarding Defendant's character and

the impact of his crimes upon ISM employees.  These include the claim that he intimidated

employees in order to prevent them from informing ISM's Trustees about his actions.  (*Id.* at 1.)

ISM also claims that the Defendant's conduct has "negatively impacted the reputation of its

employees and Board."  (*Id.*)

In its Sentencing Memorandum, the Government relies at least in part upon the victim's

representations regarding the harm it has suffered to request an upward departure.  The

allegations made by ISM are factors that may affect Defendant's sentence.  Defendant has

admitted his guilt and has entered a plea of guilty to what can best be characterized as extensive

fraud during his tenure at ISM.  The Government's argument that the sentencing guidelines do

not accurately capture the harm done in these unique circumstances is at least colorable.

Defendant has offered reasons why he believes that the document requests should be

granted.[2]  We will consider each request in turn:

1. **Annual audit reports for the years 1997-2005 including management representation letters.**

   Defendant argues that these documents are relevant and necessary because an
   open dispute to be addressed at sentencing relates to Defendant's actions with

---

[2]At oral argument, Defendant suggested that there was a culture of corruption at ISM and
that this is a mitigating factor that the Court should consider at sentencing.  Many of the
documents requested by Defendant appear to be related to this mitigation argument.  We reject
the idea that such a culture, if it did exist, should be considered by this Court as a mitigating
factor when imposing sentence on John Carter.

regard to a donated vessel named the KIAH/CYRENE. We find this request relevant to the extent it seeks annual reports referencing the vessel in question. ISM must produce only those annual reports which explicitly identify the KIAH/CYRENE. The Motion to Quash Request No. 1 is denied only as to the reports referencing the KIAH/CYRENE.

2.   **UNUM policy LAD362556 disability policy for John Carter.**

Defendant argues that an open issue at sentencing will be Defendant's restitution obligation, and that any monies ISM received from the subject insurance policy will bear on this question. This request seeks relevant information and is not burdensome. The Motion to Quash Request No. 2 is denied.

3.   **"Conflict of Interest Forms" completed by Trustees/Port Wardens for the years 1997-2005.**

Defendant argues that these documents are necessary to demonstrate that ISM Trustees also violated conflict-of-interest policies. This is an attempt to redirect blame from Defendant to others. The request is not made in good faith. What others may have done does not explain or excuse Defendant's criminal conduct. The Motion to Quash Request No. 3 is granted.

4.   **Any and all documents, including , but not limited to invoices, donation forms etc. regarding ISM owned vessels stored at Osprey Point Marina in Rock Hall, MD specifically including but not limited to the vessels: NIMBUS and KATRINA (ca. 1994-98).**

Defendant argues that these documents are necessary to demonstrate that ISM Trustees misused the Osprey Point Marina. Defendant argues that this is a mitigating factor. We conclude that this request is not made in good faith. It is an attempt to redirect blame from Defendant to others. The Motion to Quash Request No. 4 is granted.

5.   **Minutes of Finance Committee meetings for 1996-2005.**

6.   **Minutes of Executive Committee meetings for 1997-2005.**

7.   **Minutes of Audit Committee meetings for 1997-2005.**

With regard to Requests Nos. 5, 6 and 7, Defendant argues that these documents are necessary because they may prove that his criminal actions were disclosed during his tenure at ISM. Defendant does not identify with any specificity which documents he believes contain such information. In fact, Defendant indicates that

there *may* have been meetings and that there *may* be minutes of those meetings. These requests are vague, ambiguous, broad, unduly burdensome, and amount to a "fishing expedition."  The Motion to Quash Requests No. 5, 6 and 7 is granted.

8.      **Minutes of Board of Trustees/Port Warden meetings for years 1997-2005.**

9.      **All documents including but not limited to bills of sale, documentation/paperwork (including brokerage payments made), storage and maintenance records, etc. relating to vessels donated to ISM between 1994-2005 and later sold.**

10.     **All internal ISM policies governing the acquisition (whether by purchase or donation) of vessels.**

11.     **All internal ISM policies governing the acceptance of donated vessels as historically significant.**

12.     **All documents evidencing approval and dates of adoption of the policies identified in ¶¶ 10 and 11 above.**

With regard to Request Nos. 8, 9, 10, 11 and 12, Defendant argues that these documents are necessary to rebut testimony that will be offered at sentencing that will be "demonstrably false and inconsistent with ISM's own records." Defendant fails to specify the nature of the anticipated testimony, let alone any specific factual allegations it believes will come into dispute at sentencing. Defendant further fails to identify what inconsistencies he fears will be offered at sentencing, or how the requested documents will serve to illuminate those inconsistencies  Defendant does not identify with any specificity which documents he believes contain such information.  These requests are vague, ambiguous, broad, unduly burdensome, and amount to a "fishing expedition." Motion to Quash Request Nos. 8, 9, 10, 11 and 12 is granted.

13.     **ISM's bylaws and related documents.**

Defendant has withdrawn this request.

14.     **Policies governing use of vessels including but not limited to those adopted on or about 5/14/04 by the Board of Trustees/Port Wardens as well as minutes evidencing adoption of the policies.**

15.     **All curatorial policies including but not limited to those adopted by the Board of Trustees/Port Wardens on or about 5/14/04 as well as all minutes and other documents relating to such policies.**

9

16.   **All ethics policies as well as all minutes and other documents relating to such policies.**

    With regard to Request Nos. 14, 15 and 16, Defendant argues that these documents are necessary to provide context with regard to Defendant's "mishandling certain historical artifacts" and "his personal use of vessels" owned by ISM. Defendant fails to explain how the requested documents would provide "context" so as to make them relevant to his sentencing. The policies in existence at the ISM during the time that Defendant was engaging in criminal activity and any change in those policies do not constitute factors that mitigate Defendant's criminal conduct. These requests are unduly burdensome and will not provide information relevant to sentencing. The Motion to Quash Request Nos. 14, 15 and 16 is granted.

17.   **Petition signed by "31 staff members" in interview expressing "no confidence" in Carter as CEO.**

    Defendant argues that an open issue at sentencing will be Defendant's demoralization of ISM's employees. This issue was raised by ISM and the government and will be addressed at sentencing. The request appears to seek only one document and compliance will not prove onerous for ISM. Motion to Quash Request No. 17 is denied.

18.   **Documents relating to vessels repaired, built and/or completed by ISM boatshop at behest or on behalf of Peter Kellogg.**

19.   **All documents relating to Peter Kellogg's use of ISM's vessels**

20.   **Documents relating to ISM's disposition of all vessels identified in ¶¶ 17 and 18 above.**

21.   **All documents evidencing donations made to ISM between 1989-2006 by Peter Kellogg and/or related donors, including donor funds, or foundations which he directs to ISM.**

22.   **All reports prepared by Karen Cronin including those sent to Peter Kellogg outlining the use of funds in ISM boatshop related activities during the years 2000-2006.**

23.   **Documents relating to the maintenance or storage costs incurred during 2000-2006 for the vessels: BULL, BEAR, TORCH, MYTH, SPY, SILENT MAID.**

24. **Bill of sale for the vessel TAMWOCK to Peter Kellogg.**

With regard to Request Nos. 18, 19, 20, 21, 22, 23 and 24, Defendant has requested documents related to the contributions from a wealthy benefactor of ISM, and the use by the benefactor of ISM vessels. Defendant suggests that this information places in context his conduct. Defendant was the one indicted here and he is the one who has admitted his criminal conduct. The relationship between ISM and its wealthy benefactors provides no context, and is not relevant to Defendant's criminal conduct. Defendant is simply attempting to redirect blame to others. These requests are unduly burdensome, and are not made in good faith. The Motion To Quash Request Nos. 18, 19, 20, 21, 22, 23 and 24 is granted.

25. **Documents relating to John Carter's annual review by the board of trustees, executive committee or chairman.**

26. **Documents relating to bonuses paid to John Carter over the course of his employment; along with letters of transmittal if any and copies of checks for same.**

Defendant argues that an open issue at sentencing will be Defendant's performance at ISM and his responsibility for negative developments at ISM between 2000 and 2005. Defendant seeks to secure these documents in direct response to representations made by ISM in its Victim Impact Statement. This issue will be addressed at sentencing. The request appears to seek only a handful of relevant documents and compliance will not prove onerous for ISM. Motion to Quash Request Nos. 25 and 26 is denied.

27. **Resignation letter of Karen Cronin, along with any agreements between Cronin and ISM relating to her separation from ISM.**

This request has been withdrawn.

28. **Copies of any letters, messages, email messages etc. relating to John Carter's management by outside sources (i.e., people not on board of trustees).**

Defendant argues that these documents are necessary to respond to unspecified suggestions in ISM's Victim Impact Statement that there had been numerous complaints about Defendant's conduct during his tenure there. Defendant's argument for relevance is vague and ambiguous, as is ISM's reference to such communications. The Motion to Quash with regard to Request No. 28 will be granted subject to the limitation that if the Government seeks to make reference to or utilize at sentencing any document which falls under the umbrella of this

request, it shall produce that document at least 12 hours before the sentencing hearing.

29.     **Copies of any and all claims and/or lawsuits made to Goldenberg Rosenthal concerning its failure to discover.**

ISM will not bear the burden and cost of producing documents related to any litigaton it might currently be engaged in against Goldenberg Rosenthal.  It shall, however, identify any such lawsuits if they have been filed.  We note that the fact that ISM may have sued its auditor for malpractice has very little bearing on the issue of whether Defendant used *sophisticated means* to commit his fraud as that term is defined in the Sentencing Guidelines.  Motion to Quash Request No. 29 is granted.

30.     **Copies of any non-privileged documents prepared by forensic accounts, Nihill & Riedley, including but not limited to reports, including worksheets, correspondence, etc.**

Defendant argues that an open issue at sentencing will be costs incurred by ISM in responding to Defendant's actions.  Defendant seeks to secure these documents in direct response to representations made by ISM in its Victim Impact Statement. The issue raised by ISM will be addressed at sentencing.  The  request appears to seek only a handful of relevant documents and compliance will not prove onerous for ISM.  Motion to Quash Request No. 30 is denied.

Based upon the foregoing, the Motion To Quash Or Modify Subpoena is granted in part and denied in part.

An appropriate Order follows.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA                    :         CRIMINAL ACTION
                                            :
            v.                              :
                                            :         NO. 07-295
JOHN S. CARTER                              :

**FILED**

OCT 3 0 2007

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

ORDER

AND NOW, this _30th_ day of October, 2007, upon consideration of Non-Party

Independence Seaport Museum's Motion to Quash or Modify Subpoena (Doc. No. 16), and all

papers submitted in support thereof and in opposition thereto, and after oral argument, it is

ORDERED that the Motion is GRANTED in part and DENIED in part consistent with the

attached Memorandum.

            IT IS SO ORDERED.

                                                      BY THE COURT:

                                                      _____
                                                      R. Barclay Surrick, Judge